2013 VT 55

# State of Vermont v. Gary Lawrence, Sr.

[80 A.3d 58]

No. 11-126

Present: **Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.**

Opinion Filed August 9, 2013

*Thomas J. Donovan, Jr.*, Chittenden County State's Attorney, and *Pamela Hall Johnson*, Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

*Allison N. Fulcher* of *Martin & Associates*, Barre, for Defendant-Appellant.

¶ 1. **Skoglund, J.** Defendant appeals his conviction of lewd and lascivious conduct with a child following a jury trial. Defendant asserts that the trial court erred in: (1) prohibiting cross-examination of complainant about certain statements allegedly made by her; (2) denying defendant's motion for a new trial upon the discovery of an exculpatory post on complainant's MySpace page; and (3) permitting the State to introduce uncharged, prior bad act evidence. We affirm.

¶ 2. In July 2009, defendant was charged with one count of lewd and lascivious conduct with a child for allegedly grabbing the

breast and buttocks of a fourteen-year-old girl and one count of obstruction of justice for purportedly telling her that he would shoot her if she told anyone about the encounter. Before trial, the State filed a "Notice of Intent to Offer Evidence of Prior Bad Acts" pursuant to Vermont Rule of Criminal Procedure 26, alleging that defendant previously touched the complainant's breasts. Defendant filed a motion in limine, seeking to suppress such evidence. The State filed a motion in limine to exclude any evidence or questioning relating to complainant's claim of a purported pregnancy and abortion when she was not in fact pregnant.

¶ 3. On the first day of trial, the court denied defendant's motion in limine, concluding that evidence of any previous physical encounter with the complainant would provide context for the jury and show defendant's intent in the charged assault; the evidence was thereby admissible to show a lack of mistake or accident, intent, common plan, and context. It granted the State's motion in limine, finding the complainant's alleged statements regarding an abortion more prejudicial than probative when analyzed under the Rape Shield Law and Vermont Rules of Evidence 608 and 403.

¶ 4. The jury returned a guilty verdict with respect to the charge of lewd and lascivious conduct and acquitted defendant on the charge of obstruction of justice. Thereafter, on March 29, 2010, defendant filed a motion for a judgment of acquittal and a motion for a new trial, both of which were denied. On June 21, 2010, defendant filed a second motion for a new trial based upon new evidence. Defendant offered as evidence a post on the complainant's MySpace page which stated, "I wasn't really sexually assaulted, I was just doing it for the attention." The court again denied defendant's request for a new trial. It concluded that defendant had not demonstrated that the testimony of the complainant was false; there was not enough evidence to warrant a new trial; and the alleged newly discovered evidence was merely impeaching. This appeal followed.

¶ 5. Defendant first contends that the trial court denied him his right to confront the complainant when it prohibited evidence suggesting that she had previously lied to a friend about having an abortion. The court precluded the evidence under the Rape

Shield Law, 13 V.S.A. § 3255,[1] and V.R.E. 608(b) and 403. During trial, defendant argued that the State opened the door to such questioning when it asked complainant's friend whether complainant ever lied about being touched before. Defendant immediately renewed his request to question complainant on whether she previously lied about obtaining an abortion, arguing that the evidence was relevant to undermine her credibility. Again, the judge denied the request, ruling that the prejudicial effect substantially outweighed the probative value. Post-trial, the court continued to find no error in such exclusion. In its decision on defendant's motion for a new trial, the court reasoned that even though the question fell within the ambit of Rule 608(b), the evidence was unduly prejudicial and properly excluded.

■ ■ ¶ 6. The trial court has discretion to balance the evidence's probative value against its prejudicial effect, and we will not disturb the trial court's ruling absent a showing of an abuse of that discretion. V.R.E. 403; *State v. Cartee*, 161 Vt. 73, 75, 632 A.2d 1108, 1110 (1993). "In criminal cases, however, the broad discretion of the trial court in evidentiary matters is limited by defendant's constitutional right to confront witnesses against him[2] and by the demands of due process." *State v. Webster*, 165 Vt. 54, 56, 675 A.2d 1330, 1332 (1996). However, the defendant bears the burden of showing that the exclusion of a particular question on cross-examination resulted in prejudice. *State v. Berard*, 132 Vt. 138, 148, 315 A.2d 501, 508 (1974).

---

[1] On these facts, the application of the Rape Shield Law is not self-evident; however, because defendant failed to object, we do not address the applicability of the rule.

[2] The Sixth Amendment to the United States Constitution guarantees the right of the accused to confront the witnesses against him and has been incorporated to apply to state proceedings through the Fourteenth Amendment. U.S. Const. amend. VI; *Pointer v. Texas*, 380 U.S. 400, 403 (1965). The Confrontation Clause affords the criminal defendant "wide latitude . . . on cross-examination for the purpose of showing who and what the witness is, and that he is unreliable, prejudiced, or biased." *State v. Berard*, 132 Vt. 138, 147, 315 A.2d 501, 508 (1974) (citation omitted). Yet the Clause's protections are not limitless. *State v. Fuller*, 168 Vt. 396, 403-04, 721 A.2d 475, 481 (1998). The Confrontation Clause gives the defendant " 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' " *State v. Brochu*, 2008 VT 21, ¶ 87, 183 Vt. 269, 949 A.2d 1035 (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)). In particular, the Clause applies only to evidence that is relevant and otherwise admissible under the rules of evidence. See *Fuller*, 168 Vt. at 403-04, 721 A.2d at 481.

¶ 7. In the present case, defendant wanted to use the evidence to show the complainant was not a truthful person. Pursuant to V.R.E. 608(b), "[t]he court may, in its discretion, admit evidence of specific instances of conduct through cross-examination to attack the witness's credibility." See *State v. Forty*, 2009 VT 118, ¶ 25, 187 Vt. 79, 989 A.2d 509; see also *United States v. Riggio*, 70 F.3d 336, 339 (5th Cir. 1995) (concluding that evidence of specific conduct may be inquired into on cross-examination of a witness pursuant to Rule 608(b) only "if the evidence tends to test the truthfulness of testimony given on direct examination" as to a material issue of the case.). Defendant wanted to challenge the complainant's credibility on cross-examination by inquiring about an instance of alleged untruthfulness that neither concerned a material issue of the case nor a topic of direct examination. See *State v. Brochu*, 2008 VT 21, ¶ 80, 183 Vt. 269, 949 A.2d 1035 (finding that credibility of witness is always open to attack, but the opportunity for such attack is not unrestricted, particularly with respect to collateral issues (citing *Berard*, 132 Vt. at 147, 315 A.2d at 508)).

¶ 8. And, while the question may have worked to undermine the complainant's credibility, the defense already introduced evidence of the complainant's character and reputation for untruthfulness from the complainant's friend and the friend's mother, indicating that the complainant had lied on several occasions and had a reputation for dishonesty in the community. The court may limit cross-examination "where the questions sought to be asked are repetitive or seeking information already elicited," *Berard*, 132 Vt. at 148, 315 A.2d at 508, or when their prejudicial effects outweigh their probative value. See V.R.E. 403. Defendant offers no more than a conclusory statement that he was prejudiced by his inability to further challenge the complainant's veracity. See *State v. Morrill*, 127 Vt. 506, 514, 253 A.2d 142, 147 (1969) (concluding exclusion of questioning on cross-examination proper when defendant failed to make a showing of abuse of discretion by trial court or prejudice). We find no error.

¶ 9. Defendant next contends that the trial court erred in denying his motion for a new trial based upon a claim of newly discovered evidence. After trial, a post stating, "I wasn't really sexually assaulted, I was just doing it for attention" appeared on the complainant's MySpace page. Defendant argues this post demonstrates that the complainant lied under oath regarding the

assault and affords him the right to a new trial based on the standards relating to false testimony and new evidence. The trial court denied the motion, finding: (1) that defendant failed to demonstrate that the complainant's testimony was false; and (2) that the newly discovered evidence was at best "merely impeaching."

¶ 10. "Where the denial of a motion for a new trial is challenged, abuse of discretion must be shown." *Sachse v. Lumley*, 147 Vt. 584, 587, 524 A.2d 599, 601 (1987). This Court, in *State v. Robillard*, held that when a claim of false testimony is brought to light "a new trial will be required when: (1) the court is reasonably well satisfied that the testimony given by a material witness is false; (2) without that testimony the jury *probably* would have reached a different conclusion; and (3) the party seeking the new trial was taken by surprise when the false testimony was given or did not know of its falsity until after the trial." 146 Vt. 623, 629, 508 A.2d 709, 713 (1986).

¶ 11. At a hearing on defendant's motion for new trial, complainant denied posting the message. She further informed the court that her former friend — a family friend of defendant — had access to her account and password. Detective Frisbie of the Burlington Police Department also testified that because MySpace expunges its records every six months, it would be impossible to ascertain from its records which computer had been used to post the message or the location of the computer. Without evidence to show that the complainant posted the comment or that the post was true, the court was not satisfied that the posting provided reliable evidence to show complainant's testimony at trial was false.

¶ 12. Notwithstanding the fact that complainant was a material witness in the trial, evidence of a post on the complainant's unsecure MySpace page offers only speculation as to authorship. Given that an adverse witness in the case had access to complainant's MySpace page for the purpose of posting messages, and that the post itself did not include information that tended to show that complainant, as opposed to the friend, was the author, the trial court did not abuse its discretion in denying the motion for a new trial under the *Robillard* standard.

¶ 13. Nor was there error under the more general framework applicable to newly discovered evidence as set forth in

*State v. Miller*, 151 Vt. 337, 338, 560 A.2d 376, 377 (1989).[3] In *Miller*, this Court held that to warrant a new trial on the basis of newly discovered evidence, defendant must meet five requirements: (1) it must appear that the new evidence would probably change the result upon retrial; (2) the new evidence must have been discovered subsequent to trial; (3) the evidence could not have been discovered earlier by the exercise of due diligence; (4) the evidence is material; and (5) the evidence is not merely cumulative or impeaching. *Id.* Given the amount of evidence offered at trial by defendant as to the veracity of the complainant and defendant's inability to establish that complainant actually posted the message, the trial court did not err in concluding that the newly discovered evidence would not probably change the result upon retrial.

¶ 14. Defendant also challenges the court's holding that the post was merely impeaching evidence and posits that whether the complainant actually authored the post and what weight it should be given is a question for the jury to decide. He cites two recent cases, *People v. Valdez*, 135 Cal. Rptr. 3d 628 (Ct. App. 2011), and *Tienda v. State*, 358 S.W.3d 633 (Tex. Crim. App. 2012), which address the admissibility and authentication of the social media pages. But, because the MySpace evidence here was offered in support of a new trial and the dispute was not over the admissibility of the evidence, we find the cases unpersuasive.

¶ 15. In *State v. Bruno*, we recognized that "a trial court's assessment of the credibility of both a witness who offers newly discovered testimony and the testimony itself is simply part of the evaluation of the quality of the evidence" that the trial court must undertake in a motion for a new trial based on newly discovered evidence. 2012 VT 79, ¶ 16, 192 Vt. 515, 60 A.3d 610 (quotation omitted). Here, based on the testimony provided at the hearing, the trial court assessed the evidence and found the quality lacking. We find no error.

¶ 16. Defendant also argues that the trial court impermissibly allowed the State to introduce uncharged prior bad act evidence.

---

[3] Where, as here, a defendant petitions the court for a new trial on the basis of newly discovered false testimony, the trial court need not employ both the *Robillard* and *Miller* standard. The more specific *Robillard* standard will suffice. Because the trial court analyzed the evidence under both standards here, we will as well. See *State v. Charbonneau*, 2009 VT 86, ¶ 14, 186 Vt. 583, 980 A.2d 279 (mem.).

During trial, the State introduced evidence that defendant had previously touched the complainant's breasts approximately a year before the alleged incident. However, the complainant could not discern whether the initial touch was intentional.

Q. Was the touch that had happened at Kristina's house different in your mind to the touch that happened outside of Myers Furniture?

A. Yes.

Q. And how — how was it different?

A. Because when I was at Kristina's, it just wasn't — like he wasn't grabbing. Like he just placed his hand and then took it off and started walking again, and I don't know if it was intentional, but at Myers, I could tell it was intentional.

¶ 17. The court concluded that the evidence went to "a lack of mistake or accident, intent, common plan, [and] context." Defendant contends that the testimony is irrelevant, more prejudicial than probative, and constitutes reversible error.

¶ 18. In reviewing the trial court's admission of prior bad act evidence under Rule 404(b), this Court determines whether the evidence was relevant and material to the cause of action, and if so, whether its admission was more probative than unfairly prejudicial. *State v. Laprade*, 2008 VT 83, ¶ 14, 184 Vt. 251, 958 A.2d 1179. The trial court enjoys "broad discretion in determining whether evidence is relevant, and will not be overruled absent an abuse of discretion." See *State v. Bernier*, 157 Vt. 265, 268, 597 A.2d 789, 791 (1991). Nonetheless, we have consistently acknowledged the need to be "vigilant in reviewing the admission of evidence of uncharged misconduct, because once jurors learn of uncharged misconduct, they tend to use an entirely different calculus of probabilities in deciding whether to convict." *State v. Forbes*, 161 Vt. 327, 330, 640 A.2d 13, 16 (1993) (quotation and alteration omitted).

¶ 19. Evidence of prior bad acts is inadmissible to show defendant's propensity to engage in criminal conduct. V.R.E. 404(b); see *State v. Moran*, 141 Vt. 10, 19-20, 444 A.2d 879, 884 (1982). Such evidence may, however, be admissible for other purposes, such as motive, opportunity, intent, knowledge, plan,

324

identity, or absence of mistake or accident. V.R.E. 404(b). Of course, the probative value of the evidence must not be substantially outweighed by its prejudicial effect. V.R.E. 403. The State contends that defendant's prior breast touching is relevant to show the historical relationship between parties or the absence of mistake or accident in the second touching. We disagree.

¶ 20. While we agree that prior bad act evidence may, at times, be necessary to explain the defendant's motivations or plan, we cannot allow the exception to swallow the rule and permit any bad act evidence as mere context for the crime. See *State v. Kelley*, 163 Vt. 325, 329, 664 A.2d 708, 710 (1995) (holding, for limited circumstances, that evidence of defendant's prior course of conduct was "necessary to explain to the jury defendant's motive for the murder" by placing "an otherwise random and bizzare act" in context). This Court has permitted context evidence in certain instances of domestic abuse "to provide the jury with an understanding of defendant's actions on the date in question." *State v. Sanders*, 168 Vt. 60, 62, 716 A.2d 11, 13 (1998). For example, in *State v. Sanders*, this Court affirmed the admission of evidence of the defendant's prior assaults on the complainant to "portray the history surrounding the abusive relationship" where the complainant "recanted most of the substantive facts" concerning the previous attacks on the stand. *Id.* at 62-63, 716 A.2d at 12-13. We concluded that knowing the relationship between the defendant and the complainant was essential in that case because "[a]llegations of a single act of domestic violence, taken out of its situational context, [were] likely to seem 'incongruous and incredible' to a jury." *Id.* at 62, 716 A.2d at 12. "Previous incidents of domestic abuse [were] also relevant to put the [complainant]'s recantation of prior statements into context for the jury." *Id.* at 63, 716 A.2d at 13.

¶ 21. Here, unlike *Sanders*, there is no need to provide the jury with an understanding of defendant's actions as there is no long line of abuse, making the charged encounter so "incongruous and incredible to a jury." *Id.* at 62, 716 A.2d at 12 (quotation omitted). In fact, the relationship between defendant and the complainant is not so entrenched or matted with abuse that any explanation regarding their previous encounter is necessary. Furthermore, it is hard to see the relevance of defendant's alleged "prior bad act" when the witness could not testify that the prior

touching was intentional. The trial court impermissibly stretched the bounds of V.R.E. 404(b) by allowing the previous touching to come in as context evidence.

¶ 22. Here, prior bad act evidence was not admissible to show lack of mistake or accident, as the defendant never claimed a defense based on some type of mistake or accident. See *United States v. Ward*, 190 F.3d 483, 489 (6th Cir. 1999) (rejecting absence of mistake as a permissible purpose for the admission of evidence when the defendant's "defense was not that she mistakenly thought she was selling powdered sugar instead of cocaine"); see also *State v. Kolibas*, 2012 VT 37, ¶ 6, 191 Vt. 474, 48 A.3d 610. In fact, defendant denies the encounter in its entirety and thus undermines the "absence of mistake" exception. As a result, the trial court erred in admitting defendant's "prior bad act."

¶ 23. The error, however, was harmless. Error is harmless if we can say beyond a reasonable doubt that the jury would have convicted defendant absent the error. See *State v. Lipka*, 174 Vt. 377, 384-85, 817 A.2d 27, 34 (2002); see also V.R.Cr.P. 52(a) ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."). In assessing harm from erroneous admission of evidence, we look to, among other things, the strength of the offending evidence; and the overall strength of the prosecution's case without the offending evidence. *Lipka*, 174 Vt. at 385, 817 A.2d at 34; *State v. Tribble*, 2012 VT 105, ¶ 41, 193 Vt. 194, 67 A.3d 210.

¶ 24. Here, the offending testimony is weak. Complainant admits that the previous contact was likely unintentional or an accident, offering little danger of inflaming the jury to punish defendant or causing the jury to see defendant as a bad man. See *State v. Bruyette*, 158 Vt. 21, 31, 604 A.2d 1270, 1275 (1992). In addition, the mother of complainant's friend, who was informed of the incident months later, testified that she did not believe that initial incident ever took place because "if it happened, [complainant] should have told me right off." The mother then went on to testify about the complainant's reputation for dishonesty. Further, the testimony concerning the previous bosom brush had little bearing on the prosecution's case, as it failed to provide defendant's motive, intent, or scheme — rather it informed the jury of a previous ambiguous, if not accidental, encounter. Moreover, the State introduced strong evidence that after the charged incident

complainant was visibly upset, crying, and shaken, among other things. Accordingly, while the introduction of defendant's prior contact with the complainant was admitted in error, the error was harmless. As such, we affirm the decision of the superior court.

*Affirmed.*