NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 129

No. 2017-376

| State of Vermont | Supreme Court |
| --- | --- |
| | |
| | On Appeal from |
| v. | Superior Court, Franklin Unit, |
| | Criminal Division |
| | |
| Norman McAllister | May Term, 2018 |

Martin A. Maley, J.

David Tartter, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Robert W. Katims and Joshua Stern, Law Clerk, of Hoff Curtis, Burlington, for
  Defendant-Appellant.


PRESENT:  Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.


¶ 1.     **SKOGLUND, J.**   In 2015, defendant, Norman McAllister, was charged with one count of sexual assault, 13 V.S.A. § 3252(a)(1), and two counts of procuring a person for the purposes of prostitution, 13 V.S.A. § 2632(a)(2), based on allegations that defendant entered into a sex-for-rent arrangement with S.L., the complaining witness, and arranged for a third person to have sex with S.L. in exchange for payment of her electric bill.  After a jury trial, defendant was convicted of one count of procuring a person for the purposes of prostitution—the sex-for-electric-bill arrangement—and acquitted of the other two charges.  Defendant appeals this conviction. Because the trial court erred in (1) admitting inadmissible evidence of prior bad acts involving

defendant's uncharged conduct with a deceased third party and (2) instructing the jury, mid-deliberations, to disregard unstricken and admitted testimony, we reverse and remand for a new trial.

¶ 2.     A jury trial was held, during which both defendant and the State presented evidence of contradicting he-said-she-said narratives of the events that led to defendant's charges.  Although defendant and S.L. agreed that S.L. worked and lived on defendant's goat farm and that they had had numerous sexual encounters, the majority of the details presented by the State were in stark contrast with those presented by defendant.  The contrasting accounts of S.L.'s relationship with defendant are as follows.

¶ 3.     It is uncontested that sometime in the fall of 2012, S.L. responded by telephone to defendant's online advertisement seeking someone to work on his goat farm, with the possibility of included housing, and that the parties spoke on the telephone to set up an in-person meeting. However, the details of those conversations are disputed.  Defendant testified that they spoke once on the telephone, briefly and exclusively about the job, and then planned to meet in person.  S.L., on the other hand, testified that she spoke to defendant several times on the telephone and that during these conversations, she expressed her desperation for the job and her willingness to go "above and beyond whatever normal duties" the job required.  S.L. testified that later in the telephone conversations, after defendant confirmed that S.L. would be willing to do "anything" for the job and housing, it became clear to S.L. that defendant was propositioning her for sex in exchange for the job and housing.  S.L. further testified that, because she needed to obtain stable and suitable housing and work to regain custody of her children, she agreed to defendant's proposition and set up a time for an in-person meeting.

¶ 4.     The details of the parties' first meeting are also disputed.  S.L. testified that after she arrived at the farm and briefly met two other workers, defendant took S.L. alone to an

2

outbuilding. There, defendant asked S.L. if she knew why she was there, and when she affirmed that she understood this was the "sexual part of the interview," defendant said "[a]s a man, that's what I like to hear." Defendant then proceeded to "French kiss" S.L. while fondling her buttocks and vagina over her clothing and breasts under her bra. Defendant denied that this was how S.L.'s in-person interview occurred and testified that their sexual relationship did not begin until after his wife died later that year.

¶ 5. The nature of their sexual interactions was disputed. While S.L. testified that some of the sexual encounters were consensual, she also testified that she frequently felt "sick, disgusted, [and] embarrassed" after their sexual encounters, but continued participating because, based on her agreement with defendant, she understood that it was required to maintain the job and housing she needed to regain custody of her children. She also testified that several encounters were not consensual and those were the basis for the sexual-assault charge. These alleged nonconsensual encounters included one occurrence when defendant inserted his entire fist into S.L.'s vagina and another instance when defendant forced S.L. to engage in anal sex. During both alleged sexual assaults, S.L. told defendant she was in a lot of pain and wanted him to stop.

¶ 6. In contrast, defendant testified that S.L. offered herself to him as comfort when he was mourning the death of his wife. Defendant further denied that his sexual relationship was premised on the sex-for-rent-and-job arrangement described by S.L. and testified that it was "all lovey and fun." He claimed that S.L. mischaracterized both alleged nonconsensual interactions.

¶ 7. Defendant and S.L. also offered varying narratives on both prostitution charges. Prior to trial, both defendant and the State filed several motions and memoranda with the trial court regarding evidence to be excluded or to be offered in support of these charges. Defendant filed a motion in limine, seeking to exclude evidence of any alleged uncharged misconduct by defendant against S.L. and other individuals. Soon thereafter, the State filed a notice of its intent to introduce

3

evidence of other acts to show defendant's motive, intent, and modus operandi: (1) to solicit sexual acts from and to engage in unwanted sexual conduct with women who sought housing or employment for themselves or another; and (2) to procure or solicit, or offer to procure or solicit, persons for the purpose of prostitution, lewdness, or assignation. Further, the State explained that the other-acts evidence introduced in connection with S.L. would be offered to give context to the charges against defendant. In response, defendant filed a memorandum supporting his motion in limine and opposing the introduction of the evidence of other acts offered by the State. Additionally, defendant filed a motion to dismiss and a memorandum in support, or in the alternative for a continuance, arguing that his due process rights were violated when the State allegedly impermissibly delayed disclosing evidence which showed that S.L. had perjured herself and had admitted to suffering from mental illness under oath in an unrelated past matter. The State opposed both motions.

¶ 8. The trial court held a hearing on both defendant's motion in limine regarding other bad acts and defendant's motion to dismiss or for a continuance. The trial court issued a written order denying defendant's motion to dismiss because it found that defendant had not met his burden of establishing that there had been a <u>Brady</u> violation.[1] The next day, the trial court issued a written decision on defendant's motion in limine, granting it in part and denying it in part. This

---

[1] Specifically, defendant alleged a violation of his due process rights in accordance with the U.S. Supreme Court's holdings in <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and <u>Giglio v. United States</u>, 405 U.S. 150 (1972). In <u>State v. Rooney</u>, this Court reiterated <u>Brady</u>'s holding and purpose: " 'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.' " 2011 VT 14, ¶ 13, 189 Vt. 306, 19 A.3d 92 (quoting <u>Brady</u>, 373 U.S. at 87). Further, we noted that "[t]he purpose of this rule is 'to assure that the defendant will not be denied access to exculpatory evidence only known to the Government.' " <u>Id</u>. (quoting <u>United States v. LeRoy</u>, 687 F.2d 610, 619 (2d Cir. 1982)).

4

decision analyzed defendant's acts with individual people, considering the acts under both Vermont Rules of Evidence 404(b) and 403, ruling on each in turn.

¶ 9.     The court first considered evidence the State offered relating to S.L.'s mother-in-law, D.L.—specifically, evidence contained in sworn statements of D.L., S.L., and C.L. (S.L.'s husband and D.L.'s son), as well as recorded telephone conversations between defendant and D.L. during which defendant solicited sexual favors from D.L. in exchange for a guarantee of housing for C.L.  The State argued that the evidence was admissible under both Rule 404(b) and Rule 403 to show plan and modus operandi and to provide context.  The trial court determined it would not permit witnesses to testify about any alleged solicitation of sex from D.L. by defendant, but would permit witnesses to testify: that D.L. communicated with C.L. regarding her knowledge of the alleged sexual activity between S.L. and defendant; about communications between D.L. and defendant about S.L. and the allegations in the pending charges, to the extent that such statements were otherwise admissible; and that defendant and D.L. were in communication separately concerning rent owed by C.L.

¶ 10.     The trial court's decision also considered evidence concerning defendant's numerous other sexual acts with S.L., including evidence that he asked S.L. to take and send pictures of her private parts to defendant, that he had S.L. engage in sexual acts with another man, and that defendant offered that S.L. engage in sexual acts with other persons.  The State argued that the evidence provided context and a coherent narrative for the alleged instance of assault, and also supported the charged act of procuring sex in exchange for a reduction of rent.  The trial court denied defendant's motion in limine, finding that that the evidence of other acts with S.L. was relevant and admissible, both as direct evidence supporting the prostitution charge relating to the sex-for-rent arrangement and as contextual evidence of the relationship between S.L. and

defendant as to the other two charges. The trial court reserved its right to revisit any of these rulings as evidence was introduced during trial.

¶ 11. Throughout trial, a central piece of the State's evidence was a telephone call recorded pursuant to a warrant obtained by law enforcement investigating the allegations. In the call between S.L. and defendant, S.L. discussed various events with defendant that supported the State's prostitution charges—the alleged sex-for-rent arrangement between defendant and S.L. and the sex-for-electric-bill arrangement that defendant allegedly set up between his friend and S.L. During the telephone call, defendant notes that he made a mistake by telling D.L. "that one thing," apparently referring to a sex-for-rent arrangement with S.L.

¶ 12. On cross-examination of defendant, the State sought to clarify this statement by attempting to elicit testimony that when D.L. approached defendant to secure housing for C.L., defendant proposed a rent-for-sex arrangement similar to his arrangement with S.L., and when D.L. balked at the idea, defendant said "look, your daughter-in-law [is] doing it." The State urged the trial court that this context was crucial for its sex-for-rent prostitution charge, while defendant argued that this very evidence was excluded in the court's motion in limine ruling and that nothing had changed to make it admissible at trial. The trial court allowed the State to question defendant as to whether he had propositioned D.L. for transactional sex.

¶ 13. The State used another portion of the call, in addition to S.L.'s testimony, to support the prostitution charge based on the allegations that defendant had arranged for S.L. to have sex with a friend of defendant's in exchange for defendant paying S.L.'s electric bill. S.L. testified that she was a few hundred dollars behind on her electric bill and that she went to defendant looking for help. Defendant agreed to pay the electric bill if S.L. would have sex with his friend. S.L. agreed to this offer, so defendant arranged a time for his friend to visit S.L. At the arranged time, S.L. had sexual intercourse with defendant's friend.

¶ 14.   S.L. also testified about a separate incident when she was behind on bills and defendant proposed another prostitution arrangement for S.L.   She testified that defendant offered to bring her around to farms to perform sexual acts with migrant farmworkers and to split the profit.  This proposed arrangement with migrant farmworkers, which never came to fruition, was also discussed on the recorded telephone call.  On the call, S.L. asks defendant, "So does this mean that I won't have to do like the other thing we had talked about either, like the whole going to farms or any of that? . . . Remember how you were gonna bring me to a farm and potentially like Mexicans or whatever, kinda see how many I could do a night or something?  Remember that?" To which defendant replied, "Well, the only thing, yeah, like you did with that one guy that one time."  S.L. replied, "Right."

¶ 15.   On direct examination, defendant denied that he was the one who proposed the farmworker scheme.   Instead, he testified that S.L. approached him with the idea, which he admonished as a horrible plan.  Defendant testified that when he asked S.L. why she would think that she could even do something like that, S.L. responded "[be]cause I did it with a guy before for money."  The State immediately objected to this comment as a violation of Vermont's "Rape Shield" law.  See 13 V.S.A. § 3255(a)(3) (excluding "[e]vidence of prior sexual conduct of the complaining witness").  During a bench conference, there was apparent confusion as to what this comment referenced.  Defense counsel's law clerk suggested that defendant was discussing the charged incident—the sex-for-electric-bill arrangement.  Defendant's counsel confirmed with defendant, off the record, that defendant was indeed referring to the charged conduct.  The trial court asked if "the jury [will] be reasonably assured that that response" referred to the charged conduct "so they're not left with some other impression," and defendant's counsel offered to clarify during the continuation of defendant's testimony.  However, the State responded, "I think just leave it alone" and said, "we can just move on," to which the court assented.  Defendant's

7

counsel continued its direct examination of defendant, with no mention of the objected-to statement, and elicited testimony in which defendant denied ever exchanging sex for rent or arranging for someone to have sex with S.L. in exchange for money.

¶ 16. After the close of evidence and closing statements, the court instructed the jury and they began deliberations. A few hours later, the jury sent the following note out to the court seeking clarification: "When [defendant] stated that [S.L.] had previously prostituted herself and there was an objection, was that objection sustained or should that statement be excluded from consideration?" During a bench conference, the parties and the court disagreed as to whether the objection was sustained, withdrawn, or overruled, and whether the evidence should be stricken. Ultimately, apparently concerned that the jury was confused by the testimony and that a playback of the testimony would just compound the issue, the court instructed the jury to disregard defendant's statement that S.L. had said "[be]cause I did it with a guy before for money."

¶ 17. The jury deliberated for several more hours before returning its verdict: guilty of one count of procuring a person for the purposes of prostitution under 13 V.S.A. § 2632(a)(2), based on the sex-for-electric-bill arrangement and not guilty of the remaining charges of procuring a person for the purposes of prostitution and sexual assault.

¶ 18. On appeal, defendant presents the following five arguments. First, the trial court erred by admitting evidence of prior bad acts involving a deceased third party, D.L., despite prior exclusion of the evidence. Second, the trial court erred by retroactively instructing the jury, in response to a question during deliberations, to disregard unstricken, admissible testimony. Third, the trial court erred by permitting a detective to testify about appellant's alleged invocation, immediately prior to his arrest, of his right to remain silent. Fourth, the trial court erred in denying defendant's motion for a continuance after the State's belated disclosure of impeachment evidence with respect to S.L. Fifth and finally, the trial court erred by requiring defendant to engage in sex-

8

offender counseling as a condition of his probation, despite the fact that defendant was convicted of a misdemeanor involving a consensual, transactional sexual act between third parties, an offense for which the alleged motivation was financial rather than sexual. Because this Court reverses and remands for a new trial based on defendant's first and second arguments, we need not reach his third, fourth, and fifth arguments.[2]

## I. Prior Bad-Acts Evidence

¶ 19. First, defendant argues that the trial court erred when it allowed the State to elicit testimony during cross examination of defendant regarding an alleged prior bad act—specifically that defendant had suggested a sex-for-rent arrangement to D.L. to cover C.L.'s past-due rent—despite initially excluding it through a pretrial motion in limine.

¶ 20. When a party seeks to admit evidence of prior bad acts, a trial court must conduct an analysis under both Vermont Rules of Evidence 404(b) and 403 to determine if the evidence is admissible. Rule 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." However, the rule carves out an exception, making some evidence "admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." V.R.E. 404(b). "Of course, evidence that fits within the exception of this rule must also pass the balancing test of Rule 403." Reporter's Notes, V.R.E. 404; see also V.R.E. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . .").

---

[2] This Court declines to address the merits of defendant's invocation argument for two reasons. First, as explained below, we find error on two separate issues sufficient to require reversal. And second, based on the State's own representation to the trial court that they presented the challenged line of questioning in an attempt to clarify the public perception that police stormed the Statehouse and forcefully arrested and removed defendant, we do not find it likely the appealed question will arise again on remand.

9

¶ 21.  "The trial court decides whether evidence is admissible in the first instance." State v. Lumumba, 2014 VT 85, ¶ 3, 197 Vt. 315, 104 A.3d 627 (citing Rule 104(a) which states that "[p]reliminary questions concerning . . . the admissibility of evidence shall be determined by the court"). Further, the trial court may reserve the right to reconsider its decisions on motions in limine during trial in light of the evidence adduced and defenses presented. The trial court is afforded broad discretion in making the determination of whether evidence is admissible, and thus this Court will only overturn a decision where "we find an abuse of discretion resulting in prejudice." State v. Williams, 2010 VT 77, ¶ 12, 188 Vt. 405, 9 A.3d 315. "In reviewing the trial court's admission of prior bad act evidence under Rule 404(b), this Court determines whether the evidence was relevant and material to the cause of action, and if so, whether its admission was more probative than unfairly prejudicial." State v. Lawrence, 2013 VT 55, ¶ 18, 194 Vt. 315, 80 A.3d 58. Despite the broad discretion given to trial courts, "we have consistently acknowledged the need to be 'vigilant in reviewing the admission of evidence of uncharged misconduct, because once jurors learn of uncharged misconduct, they tend to use an entirely different calculus of probabilities in deciding whether to convict.' " Id. ¶ 18 (quoting State v. Forbes, 161 Vt. 327, 330, 640 A.2d 13, 16 (1993)).

¶ 22.  When initially presented with the evidence in defendant's motion in limine, the trial court correctly anchored its analysis by noting that the State must "show precisely how the proffered evidence is relevant to the theory advanced, how the issue to which it is addressed is related to the disputed elements in the case, and how the prohibitive value of the evidence is not substantially outweighed by its prejudicial effect." State v. Winter, 162 Vt. 388, 393, 648 A.2d 624, 627 (1994). As explained above, the court granted defendant's motion in part and denied it in part. But, at trial, when the court reconsidered its decision on the admissibility of the prior bad

act evidence, it failed to properly analyze the same. We conclude the admission of the alleged prior bad act evidence was an abuse of discretion.

¶ 23. First, the disputed evidence had no nonpropensity relevance in this case. Based on the evidence submitted at trial, "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" were not at issue. V.R.E. 404(b). To be admissible, other-act evidence must "relate to an element of the offense or defense that is genuinely in issue." Winter, 162 Vt. at 393, 648 A.2d at 627 (refusing to admit uncharged misconduct evidence as bearing on uncontested issue). The only material fact that was genuinely disputed in this case was the nature of the specific sexual acts in question. Defendant's alleged behavior toward other women in the time before or after his sexual encounters with S.L., whether inappropriate or not, had no bearing on the State's proffer.

¶ 24. Specifically, the evidence concerning communications between defendant and D.L. was not admissible to prove that defendant's conduct with D.L.—suggesting a sex-for-rent scheme similar to the alleged plan between S.L. and defendant—was part of a common plan or scheme to exploit people to whom he offered housing or employment for sexual gratification. In Winter, this Court noted that "admission of uncharged misconduct evidence to show a plan comes perilously close to using such evidence to show propensity and require[s] a clear inference of the existence of a plan from the prior acts." Id. at 396, 648 A.2d at 629 (quotations omitted). Here, defendant's alleged suggestion to D.L. of an exchange of sex for her son's rent does not support the finding of a common plan or scheme to exploit. The distinction between the circumstances of D.L. and S.L.—namely that D.L. was not employed by or seeking housing from defendant for herself, but instead was discussing housing for her son with defendant—is critical. The State's theory that defendant exploited individuals over whom he had authority could not lead to a clear inference of a plan because D.L. was not under defendant's authority.

11

¶ 25. Nor was the evidence admissible for the State's second offered purpose—to prove defendant's modus operandi. Modus operandi evidence is admissible to prove identity where identity is an issue in the case, and because identity was not an issue in this case, the evidence was inadmissible for that purpose. See State v. Bruyette, 158 Vt. 21, 30, 604 A.2d 1270, 1274 (1992) (admitting evidence of defendant's unique sexual methods with his ex-girlfriend to prove his identity as person who sexually assaulted another woman). And, while modus operandi evidence is admissible for other purposes, such as whether a victim consented to sexual activity, "the pattern and characteristics of the prior acts must be so distinctive, in effect, to constitute the defendant's signature." Id. at 27, 604 A.2d at 1273 (quotation omitted). Given the differences between D.L.'s and S.L.'s situations, and their respective relationships with defendant, it was not admissible for this purpose.

¶ 26. In its decision on the motion in limine, the trial court declined to admit the evidence under the State's theory that the alleged acts between defendant and D.L. were necessary to establish the context within which S.L.'s allegations were brought to the police.[3] The court noted that although the theory presented a potentially legitimate not-for-character purpose, the evidence should nonetheless be excluded under the Rule 403 balancing test because it found that the probative value of the criminal allegations concerning defendant's solicitation of D.L. was minimal as to the circumstances under which S.L.'s allegations came to light but the prejudicial effect was great. The court went on to explain that it understood the State's interest in presenting the jury with context for a complete story, but held that the specific allegations of defendant's interactions with D.L. were unnecessary to meet that stated need. Based on this analysis, the court limited testimony about communications between D.L. and C.L. and between D.L. and defendant.

---

[3] The investigation of defendant began when D.L. spoke with the state's attorney and state police investigators about allegations of inappropriate conduct by defendant.

It ruled that witnesses were prohibited from testifying about any alleged solicitation of sex from D.L. by defendant.

¶ 27. However, at trial, the State again requested permission to adduce testimony from defendant on cross-examination that he propositioned D.L. to enter into a sex-for-rent arrangement to cover C.L.'s past-due rent, and again argued that the testimony was admissible to establish the context within which S.L.'s allegations were made. Over defendant's objection, the court permitted the State to question defendant as to whether he had, in fact, told D.L. about sex with S.L. in the context of propositioning D.L. for sex.

¶ 28. The court gave no justification for its decision to admit the evidence other than, essentially, the fact that defendant had denied the charges against him. Because defendant's testimony denied all of S.L.'s testimony on the issues and "made it quite apparent" that it was S.L. who propositioned defendant, rather than defendant propositioning S.L., the court remarked that it seemed "unfair to not complete the full story and not allow the State to have—you know, complete the context of what's going on." The trial court stated "[i]f [defendant] is testifying completely different and the State has other evidence contrary to that, then [the evidence is not] unduly prejudicial, and it's certainly probative."

¶ 29. When the court revisited the issue at trial and allowed the question, it committed error. The court's explanation at trial does not support its decision to admit the challenged question and testimony. Neither the admission of the unredacted call nor defendant's contradiction of S.L.'s version of events served to sufficiently open the door to the introduction of the propensity evidence.

¶ 30. Moreover, whether or not the proposed question represented a legitimate not-for-character purpose under Rule 404(b), it was still subject to Rule 403's balancing test. And, as the trial court found in its motion in limine, "the potential unfair prejudice to the defendant is great

13

from evidence of a past unpunished crime that is similar to that for which he is charged" and "[i]n cases in which such high potential for prejudice exists, we have often noted a related high probative value" as being prerequisite for admissibility. Winter, 162 Vt. at 399, 648 A.2d at 631. The trial court's conclusion in its decision on defendant's motion in limine that the probative value of the criminal allegations concerning defendant's solicitation of D.L was minimal was correct. And, while the State has a legitimate interest in presenting the jury with a complete story, specific allegations of defendant's interactions with D.L. were not probative of whether defendant's sexual activity with S.L. was consensual or whether defendant propositioned S.L. for the alleged sex-for-rent and sex-for-electric-bill arrangements. There was nothing at trial that increased the probative value of defendant's alleged solicitation of D.L. or decreased the high risk for prejudice, and thus this Court concludes that the trial court's reversal of its motion in limine was an abuse of discretion that resulted in prejudice.[4]

## II. Belated Instruction To Ignore Evidence

¶ 31. Defendant next argues that the trial court erred because it did not have the authority or discretion to retroactively instruct the jury to ignore evidence on the record, subject to an objection that was withdrawn by the State. Further, defendant argues that there would not have

---

[4] The State argues that, because defendant was acquitted of the charge of engaging in prostitution by way of the sex-for-rent arrangement with S.L., he was not prejudiced, and thus any abuse of discretion did not rise to reversible error. However, as we noted above, "we have consistently acknowledged the need to be vigilant in reviewing the admission of evidence of uncharged misconduct, because once jurors learn of uncharged misconduct, they tend to use an entirely different calculus of probabilities in deciding whether to convict." Lawrence, 2013 VT 55, ¶ 18 (quotation omitted). And, because the evidence lacked a high probative value to counter the significant prejudicial effect, we must reverse.

The State further argues that the question was admissible for impeachment by prior inconsistent statements. Because the State did not seek to ask the question to impeach defendant by prior inconsistent statements and because the trial court did not specify that the evidence would be admitted for impeachment purposes, we decline to analyze whether the evidence was permissible for impeachment purposes.

14

been any legal justification for striking the testimony from the record during trial when it was made. Therefore, defendant argues that a new trial is required to remedy the error. For the reasons below, we hold that the trial court erred.

¶ 32. As described above, defendant testified that S.L. had suggested to defendant the following scheme: if defendant drove S.L. from farm to farm, she would prostitute herself out to migrant farm workers and split her profits with defendant. Defendant testified that he had told S.L. that it was an awful plan and then asked her why she would think that she could even conduct such a scheme. Defendant testified that S.L. responded "[b]ecause I did it with a guy before for money." The State immediately objected and argued that the comment was a violation of Vermont's "Rape Shield" law. Although the judge, the State, and defendant's lead counsel initially thought this comment referred to an incident separate from the charged conduct, it was ultimately clarified that the testimony referenced the charged sex-for-electric-bill arrangement.

¶ 33. After this clarification came to light, the trial court expressed concern the jury could be left with a misperception of the testimony and defendant's counsel offered to clarify. However, the State suggested "I think just leave it alone" and noted that "we can just move on," to which the court assented. Defendant's counsel continued its direct examination of defendant, with no mention of the objected-to statement, and elicited testimony in which defendant denied ever exchanging sex for rent or arranging for S.L. to have sex with another in exchange for money.

¶ 34. During deliberations, the jury sent a question to the court: "[w]hen [defendant] stated that [S.L.] had previously prostituted herself and there was an objection, was that objection sustained or should that statement be excluded from consideration?" At a bench conference, the parties and the court disagreed as to whether the objection was sustained, withdrawn, or overruled, and whether the evidence should be stricken. Ultimately, due to the concern that the jury was misled or confused by the testimony and that a playback of the testimony would just compound

15

the issue, the court instructed the jury to disregard defendant's testimony that S.L. had said "[be]cause I did it with a guy before for money."

¶ 35. On appeal, defendant argues that because there is no legal authority that allows the trial court to issue evidentiary rulings and instruct a jury to disregard evidence after the case has been given to the jury for deliberation, the trial court erred and therefore, he is entitled to a new trial. This Court agrees, holding: (1) that the State effectively withdrew its objection during trial; and (2) that the trial court committed error by summarily and retroactively instructing the jury to ignore testimony that was never subject to a sustained objection or struck from the record and that was very relevant to the charges of procuring a person for the purposes of prostitution.

¶ 36. Although the State did not use explicit terms withdrawing its objection, by suggesting that defense counsel should just "move on," it effectively withdrew that objection. The State's argument that defense counsel was not required to "move on" based on the State's suggestion is unavailing—the court offered to order clarification, but instead of accepting that offer, the State made a strategic decision to move on without asking for a ruling on its objection or clarification through defendant's direct testimony. Having withdrawn the objection, the State is not entitled to seek to exclude evidence after the close of evidence and closing arguments and while the jury is in deliberation.

¶ 37. When the trial court instructed the jury to disregard testimony that remained properly on the record after a withdrawn objection, it erred. When the jury asks a question "during its deliberations, [the question] should be disclosed to counsel and counsel [should be] given an opportunity to be heard before the trial judge responds." State v. Keiser, 174 Vt. 87, 91, 807 A.2d 378, 382 (2002). This Court has addressed the authority and discretion of a trial court to issue supplementary instructions in response to a jury question, but has not addressed whether a trial court has the authority to summarily strike evidence it believes, in the context of the jury's

16

question, has misled or confused the jury. See, e.g., State v. West, 151 Vt. 140, 143, 557 A.2d 873, 875 (1988) ("The necessity, extent and character of supplementary instructions requested by a jury are matters that are within the sound discretion of the trial court.").

¶ 38. Attorneys have the right to rely on the understanding that the evidence that has been admitted or excluded during trial will remain admitted or excluded when the case is given to the jury for deliberation. It would be fundamentally unfair to require attorneys to predict what evidence may or may not be removed from the jury's consideration by the trial judge after closing arguments and after the case was given to the jury.

¶ 39. Further, a trial court does not have the authority to explain or make inferences about, then exclude, testimony in response to a question from the jury mid-deliberation. When the jury asks a question regarding specific testimony, the court should read or replay the testimony as reflected by the record and reiterate its ruling on any objections, or offer a supplemental jury instruction if the court, in its discretion, determines that one is required. See State v. Boglioli, 2011 VT 60, ¶ 14, 190 Vt. 542, 26 A.3d 44 (mem.) (noting that it is within trial court's discretion to determine "necessity, extent and character of supplementary instructions" in response to jury question (quotation omitted)) overruled on other grounds by State v. Bolaski, 2014 VT 36, 196 Vt. 277, 95 A.3d 460. Here, while the court properly gave the State and defendant the required opportunity to be heard outside of the jury's presence regarding the court's response, that consultation resulted in an improper decision by the court to belatedly strike admitted evidence after the case had been given to the jury. The determination that admitted evidence and testimony should be removed from the jury's consideration after it have begun deliberations, instead of at trial when it was elicited, is error.

¶ 40. The trial court's decision to strike a segment of defendant's testimony ignored that the State tacitly withdrew its objection to the answer given by defendant and the testimony was

17

admitted to the record without a ruling on the objection or clarification, and thereby deprived defendant of his right to argue against the objection or present further evidence to clarify and reinforce its case. This result is highly prejudicial and alone warrants reversal.

¶ 41. Because this Court concludes the trial court committed reversible error when it admitted previously excluded prior-bad acts evidence and when it retroactively instructed the jury to disregard admitted testimony during deliberation, we do not reach defendant's remaining arguments.

Reversed and remanded for a new trial.

FOR THE COURT:

_____

Associate Justice

18