# In re Scott David Dunkerley

[376 A.2d 43]

No. 56-77

Present: **Barney, C.J., Daley, Larrow, Billings, and Hill, JJ.**

Opinion Filed June 7, 1977

*James L. Morse*, Defender General, and *Charles S. Martin*, Appellate Defender, Montpelier, for Petitioner.

*M. Jerome Diamond*, Attorney General, Montpelier, *Dale O. Gray*, Caledonia County State's Attorney, St. Johnsbury, and *William T. Keefe*, Assistant Attorney General, Montpelier, for Respondent.

**Barney, C.J.** This is a petition for habeas corpus based on the prohibition against double jeopardy. The issue came about as the result of emergency hospitalization of the defendant on the third day of his trial for the killing of his stepfather, under a prosecution for first-degree murder. The diagnosis relating to the emergency hospitalization was that of a collapsed lung with a prognosis of a seven to ten-day hospitalization period. The trial court had another doctor examine the defendant, and the diagnosis was confirmed by him, and by a third doctor who was to treat the defendant. The court then ordered a mistrial on its own motion. It is the defendant's position that that ruling raises the barrier of double jeopardy and prevents retrial.

The contested issue in the case related to the insanity or diminished capacity of the defendant so that he would be not guilty by reason of insanity or, at least, not guilty of first-degree murder. This was the only defense put forward; the facts of the shooting of the stepfather with a .22 caliber pistol were not disputed.

At the time of the medical emergency, the jury had been empanelled and the trial was under way. Opening statements describing the theories of the prosecution and defense had been made to the jury. The defendant's mother had testified about the shooting and the relationship between her son, the defendant, and her husband, his stepfather. She had also testified about the defendant's childhood and about his personal difficulties. She had testified on both direct and cross-examination. After the completion of this examination, the court had recessed for the day. It was the following morning that Dunkerley was taken to the hospital.

The decision to declare a mistrial was left to the trial court. The State refused to move for that disposition, and the defendant, through his attorney, opposed stopping the trial. Defendant's counsel proposed that the defendant waive his right to be present at the trial so that the proceedings could continue. It was also proposed that sequestration of the jury be waived and, if necessary, the trial be temporarily recessed. Counsel based the claim of right upon V.R.Cr.P. 43(b), which provides:

> The further progress of the trial to and including the return of the verdict shall not be prevented whenever a defendant, initially present,
>
> (1) in noncapital cases, voluntarily absents himself after the trial has commenced, whether or not he has been informed by the court of his obligation to remain during the trial, or
>
> (2) engages in conduct which is such as to justify his being excluded from the courtroom.

The trial court denied the motion on the basis that the defendant's absence from the courtroom was not "voluntary", as contemplated by the rule in question. In the trial of the habeas corpus petition, that court took the same view - that the absence of the defendant was not voluntary, and that retrial after the declaration of mistrial would not involve double jeopardy. The defendant appealed that decision here.

The defendant's concern for the continuation of the trial centers on the testimony of his mother. She was a witness to his psychological dependence upon her, and to the possibility of his losing touch with reality and believing that she wanted her husband dead. She testified to her husband's mistreatment of her and his dislike of the defendant. From a tactical point of view, it was the opinion of defendant's counsel that this testimonial appearance went well, and that there was risk that a second appearance, before a new jury, might not go as well, and, further, would cause great emotional distress to the defendant's mother, a key witness.

Under former Vermont practice, the declaration of a mistrial would not have automatically raised a bar of double jeopardy, since it irrevocably attached only upon rendition of a judgment of not guilty. *State* v. *Velander*, 123 Vt. 60, 61, 181 A.2d 60 (1962); *State* v. *Frotten*, 114 Vt. 410, 416-17, 46 A.2d 921 (1946). It was discretionary with the trial judge as to whether he would require the trial to go forward, allow retrial, or order a verdict directed in favor of the defendant. That practice did have the advantage of lessening the tactical maneuvering generated by automatic rules of jeopardy that apply in early trial stages. The trial judge had the authority to prevent any improper impositions or an infringement of a defendant's rights. *State* v. *Deso*, 110 Vt. 1, 10-11, 1 A.2d 710 (1938).

■ Since *Benton* v. *Maryland*, 395 U.S. 784 (1969), Vermont law relating to former jeopardy has, through the operation of the Fourteenth Amendment, become the law of the Double Jeopardy Clause of the Fifth Amendment. Cases raising the issue must be reviewed under the standards for that clause as set out by the United States Supreme Court.

■ Jeopardy attaches, in contrast to previous Vermont practice, with empanelling and swearing in of the jury, or, in a trial by court, when the court begins to receive evidence. *Illinois* v. *Somerville*, 410 U.S. 458, 471 (1973) (White, J., dissenting). This case had passed that point. It was interrupted short of verdict.

The law of *United States* v. *Perez*, 22 U.S. (9 Wheaton) 579, 580 (1824), is still cited as the governing law of mistrial, as recently as *United States* v. *Martin Linen Supply Co.*, 430 U.S. 564, decided April 4, 1977. The guiding principle stated by Mr. Justice Story reads:

> The prisoner has not been convicted or acquitted, and may again be put upon his defence. We think, that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent ˙circumstances, and for very plain and obvious causes; and, in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favour of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office.

Thus, under the Double Jeopardy Clause also, it has been found necessary to make room for the operation of judicial judgment to prevent the application of the doctrine from being unfair or used to defeat the ends of justice. Although the

approaches may differ, basic constitutional objectives have a way of ending up with comparable standards for substantively identical objectives.

The *Perez* case, quoted above, stated in 1824 that definition of all the circumstances governing the exercise of judicial discretion in granting a mistrial is impossible. The Supreme Court maintains that position until this very day. Various concerns have been mentioned, but none has been set out as a governing concern that would override the judge's duty to exercise his discretion.

One of the discretionary concerns talked about in recent cases relates to the interest of the defendant in carrying his trial through to verdict before a jury he sees as possibly favorably disposed toward him. See *United States* v. *Jorn,* 400 U.S. 470, 486 (1971). But, again the cases make this no more than a circumstance the judge must fully and fairly consider in reaching a decision on the propriety of a mistrial. *Wade* v. *Hunter,* 336 U.S. 684, 689 (1949). It does not reach the status of a binding or governing requirement, since its unfounded assertion could be used too easily to defeat the ends of public justice. There is no suggestion in this case that it was ignored as a consideration by the trial court.

Along with the double jeopardy issue in this case is the additional constitutional concern relating to the presence of the accused at his trial to confront the witnesses against him. The argument on behalf of the defendant would reduce this issue to the simple volitional choice of the defendant to insist upon or waive this Sixth Amendment right. The trial judge was burdened with the duty of taking a broader look at the issues involved, in arriving at his discretionary ruling.

■■ There is no doubt but what a judge may allow a non-capital trial to proceed in the absence of a defendant given an effective waiver of his Sixth Amendment right to be present. Indeed, a waiver may even be constructed from the actions of the defendant, including his deliberate nonattendance at the trial. This is what V.R.Cr.P. 43(b) is all about. Its basic design is to convert certain deliberate actions of a defendant into waivers of his right to be present. The purpose is to prevent a defendant, by such deliberate acts, being able to bar the holding of a trial to determine his guilt or innocence. See *Illinois* v. *Allen,* 397 U.S. 337 (1970).

Both the trial court and the judge hearing the habeas corpus petition held the defendant's absence to be involuntary.

Considering the inception of the problem, this is, of course, correct. From this fact, the conclusion followed that V.R.Cr.P. 43(b) did not apply. Although the result reached is correct, it is necessary to comment on the underlying legal principles.

The unstated premise in the defendant's contention involving his Sixth Amendment right to be present and V.R.Cr.P. 43(b) is that he has a constitutional right to have the trial proceed without him if he waives attendance. It is upon this basis that counsel for the defendant have sought to convert his necessary and inadvertent absence into a voluntary one by subsequent waiver.

Defendant concedes that the defendant's alleged right to have a criminal trial continue in his absence has limitations, such as where his identity is at issue, citing *United States* v. *Fitzpatrick*, 437 F.2d 19, 27 (2d Cir. 1970). With insanity the governing factual issue in this case, a comparable concern relating to the defendant's presence in court arises in connection with the jury's observation and evaluation of him with respect to his mental condition. See *In re Pray*, 133 Vt. 253, 257, 336 A.2d 174 (1975).

The proposed waiver of the defendant's right to be present did not compel the trial court to go forward or require that the mistrial constitute double jeopardy. V.R.Cr.P. 43(b) is a rule which does no more than permit certain conduct of a defendant to be construed as a waiver of his constitutional right to be present at the trial, thereby permitting the trial court to exercise its discretion in that light as to whether or not a mistrial should be granted, subject to all the other considerations expressed in United States Supreme Court opinions following *United States* v. *Perez, supra,* 22 U.S. (9 Wheaton) 579 (1824).

In *Featherston* v. *Mitchell*, 418 F.2d 582, 586 (5th Cir. 1969), *cert. denied,* 397 U.S. 937 (1970), we find the statement, "Protection of Featherston's right not to be so tried, notwithstanding the protestations of his lawyers, made imperative a mistrial in this case." The issue was one of mental competency raised during the fourth week of trial, based on diabetic "blackouts". The mistrial was granted over the objections of the trial counsel. The application of judicial discretion was held necessary and proper.

The Second Circuit, speaking through Judge Lumbard in *United States* v. *Tortora*, 464 F.2d 1202, 1210 (2d Cir.), *cert.*

*denied,* 409 U.S. 1063 (1972), stated with respect to the continuation of a trial with the defendant absent:

> We do not here lay down a general rule that, in every case in which the defendant is voluntarily absent at the empanelment of the jury and the taking of evidence, the trial judge should proceed with the trial. We only hold that this is within the discretion of the trial judge, to be utilized only in circumstances as extraordinary as those before us. Indeed, we would add that this discretion should be exercised only when the public interest clearly outweighs that of the voluntarily absent defendant.

█ This is our view of the law, that continuation of a trial with a defendant absent is the extraordinary case, to be undertaken only after the exercise of a careful discretion by the trial judge. The voluntary nature of the defendant's absence only makes the continuation of the trial possible after a review of all the appropriate concerns; it does not compel the trial to go on.

In this case, the record discloses not only the insanity issue, but also a possible prolonged absence by the defendant. Moreover, with the growing body of law that permits a defendant to disaffirm actions such as waiver by attorneys on his behalf, soundly or unsoundly, a realistic evaluation of the comparative interests of the public and the defendant in a trial without the issue of his right to be present is appropriate. It has not been made to appear that the order of mistrial was made in a context that now requires the application of the doctrine of double jeopardy.

*Judgment affirmed.*