2007 VT 64

**STATE of Vermont v. William STANLEY**

[933 A.2d 184]

No. 05-550

¶ 1. July 16, 2007. Defendant William Stanley appeals his conviction of escape and the corresponding sentence imposed by the district court. He claims the conviction should be reversed because: (1) the State failed to prove an element of the crime; (2) the district court erred by permitting the trial to commence without his presence; and (3) the court abused its discretion by denying his attorney's motion to withdraw. Defendant further contends that his sentence should be reversed and remanded because the minimum and maximum terms provided are effectively the same. We affirm both the conviction and the sentence.

¶ 2. In July 2004, defendant was incarcerated at Marble Valley Regional Correctional Facility. Early that month, he met with Department of Corrections (DOC) employees to discuss the conditions upon which he would be furloughed. The written furlough agreement specifically prohibited defendant from contact or attempted contact with a named individual and required him to stay away from the Best Value Motel in Pownal, Vermont. In addition, the agreement required defendant to abide by weekly furlough authorization permits ("weekly schedules") detailing his whereabouts, as part of his case plan and supervision program. The agreement was signed by defendant and two DOC employees. On July 19, DOC personnel made two unsuccessful attempts to contact defendant at his apartment, where he was required to be according to his approved weekly schedule. The next day, when defendant could not be found, the DOC personnel entered defendant's apartment with the landlord's assistance; defendant was not there. On July 29, 2004, the State charged defendant with escape in violation of 13 V.S.A. § 1501(a)(1) and filed a request for an arrest warrant. Defendant was found on October 1, 2004, hiding in the closet of the named individual's room at the Best Value Motel in Pownal and was arrested.

¶ 3. Defendant was arraigned on October 4, 2004 and assigned a public defender. The matter was set for jury draw on March 3, 2005; however, in late February 2005, the public defender moved to withdraw as defendant's counsel. The motion was granted on March 2, 2005, and conflict counsel was assigned to represent defendant. The matter was reset for jury draw on July 21, 2005. On July 6, 2005, conflict counsel moved to withdraw. The

court granted the motion on July 18, 2005 and appointed another attorney to represent defendant at trial. A status conference was held, and the court set jury draw for September 19, 2005. Prior to the commencement of jury draw, defendant filed a complaint against his attorney with the Professional Responsibility Board.

¶ 4. On September 19, the court held a preliminary hearing at which the court officer informed the court that defendant was in a holding cell but refused to come into the courtroom because he had filed a complaint against his attorney and did not want to be represented by him at jury draw. A deputy sheriff further informed the court that defendant's lawyer had gone to the holding cell but defendant refused to speak with him. The court declined to physically force defendant's presence, determining that his deliberate and voluntary act of refusing to enter the courtroom indicated his intention to waive his presence at trial. Instead, the court made arrangements for defendant to be periodically updated on the jury draw's progress and given the opportunity to enter the proceedings at any point if he so chose. Defense counsel did not object to the court's decision to proceed, and a jury was selected without defendant's presence.

¶ 5. On the morning of trial, September 21, 2005, the court addressed defense counsel's motion to withdraw; defendant was present for the hearing. Defense counsel argued that there was a conflict of interest because defendant had filed an ethical complaint against him. The court, however, found that the complaint alone was not enough to create a conflict of interest necessitating appointment of new counsel, and denied the motion. At the conclusion of the motion hearing, defendant left the courtroom and refused to return for the trial that immediately followed. The court stated that it would not compel defendant's physical presence, and defense counsel did not object. The court did, however, make arrangements for a court officer to check in with defendant every thirty to forty-five minutes to see if he wished to return to the courtroom. At the close of the evidence, defense counsel moved for a mistrial on the basis of defendant's absence from the courtroom. The court denied the motion, reiterating its earlier finding that defendant's deliberate acts were a voluntary waiver of his right to be present at trial. Defendant was convicted of escape.

¶ 6. After trial, defendant filed a motion for acquittal pursuant to V.R.Cr.P. 29, claiming the State had not proven an element of the crime — the existence of an "order." 13 V.S.A. § 1501(b)(2). In support of the motion, defendant further argued that the court erred in finding defendant's absence from jury draw and trial to be "knowing and voluntary," denying defendant's motion for a mistrial due to his absence, and denying defense counsel's motion to withdraw. The court denied the motion on all grounds.

¶ 7. Following this determination, defense counsel filed another motion to withdraw due to irreconcilable differences and the breakdown of his relationship with defendant. Counsel claimed this prevented him from adequately preparing defendant for sentencing and reviewing the presentencing investigation report with him. The court found that the breakdown was caused by defendant's deliberate refusal to work with counsel in an effort to delay proceedings, and denied the motion.

¶ 8. At the sentencing hearing held on December 1, 2005, the court sentenced defendant to eight-to-nine years to be served concurrently with his existing sentence, acknowledging that with good-time credit defendant's maximum and minimum sentences would essentially be the same and would preclude him from further furlough. Defendant now appeals.

¶ 9. We first address defendant's claim that the district court erroneously denied

his motion for acquittal because the State failed to establish that there was a furlough "order" in effect in accordance with 28 V.S.A. § 808. On appeal, we review the evidence presented by the State "in the light most favorable to the prosecution and excluding any modifying evidence, and determine whether that evidence sufficiently and fairly supports a finding of guilt beyond a reasonable doubt." *State v. Baird*, 2006 VT 86, ¶ 13, 180 Vt. 243, 908 A.2d 475 (internal citation and quotations omitted). To prove escape the State must establish that defendant "fail[ed] to return from furlough to the correctional facility at the specified time, or visit[ed] other than the specified place, as required by the order issued in accordance with section 808 of Title 28." 13 V.S.A. § 1501(b)(2). Section 808 of Title 28, in turn, grants the Commissioner of the DOC the authority to furlough eligible prisoners. Defendant claims that the conditional reentry form that he signed with DOC employees was merely an agreement, and therefore, the State did not present sufficient evidence that a furlough "order" was in place at the time he was arrested. While the term "order" was not technically used to describe the document governing defendant's furlough, it was executed in accordance with 28 V.S.A. § 808 by the Commissioner's authority. Furthermore, defendant's description of the document as an agreement is misguided to the extent that he had no bargaining power to negotiate its terms. Defendant was required to accept the terms provided by the Commissioner or he would not be granted furlough. Thus, we conclude that the State presented sufficient evidence proving that the conditional reentry form and weekly schedules were an order for purposes of the escape statute and were issued in accordance with 28 V.S.A. § 808. To determine otherwise would be to frustrate the legislative purpose underlying the escape statute, as prisoners are often released on

furlough by execution of a conditional reentry form and weekly schedules, and the Commissioner does not have authority to issue furlough orders by other means. See *State v. Mobbs*, 169 Vt. 645, 647, 740 A.2d 1288, 1290 (1999) (mem.) (holding that the Court's interpretation of criminal statutes "should not frustrate the statutory purpose or lead to absurd consequences").

¶ 10. Defendant next claims that the court erroneously allowed the jury to be selected and the trial to proceed without his presence. Vermont Rule of Criminal Procedure 43 provides that a defendant shall be present at jury draw and every stage of trial, except that "[t]he further progress of the trial . . . shall not be prevented whenever a defendant, initially present, . . . voluntarily absents himself after the trial has commenced, whether or not he has been informed by the court of his obligation to remain during the trial." See also *State v. Koveos*, 169 Vt. 62, 72-73, 732 A.2d 722, 729-30 (1999); *State v. Bradley*, 164 Vt. 346, 348, 670 A.2d 811, 813 (1995). In *In re Dunkerley*, we determined that under this rule a waiver can be construed from the defendant's actions, "including his deliberate nonattendance at the trial," and in light of such waiver, the trial court may exercise its discretion as to whether a mistrial should be granted. 135 Vt. 260, 264-65, 376 A.2d 43, 47-48 (1977). Here, defendant was brought to the courthouse by DOC personnel, but refused to enter the courtroom during jury draw or trial, remaining instead in the court's holding cell. Throughout the course of jury selection and trial, he was given numerous opportunities to enter the proceedings, but continued to refuse. In addition, defendant was periodically informed of the progress of the proceedings per the court's instruction. Defense counsel did not object to the court's decision not to physically compel defendant's presence until the close of evidence when he moved

for a mistrial on the basis of defendant's absence. The trial court reasonably determined that defendant's refusal to enter the courtroom was one tactic in an overall strategy to prevent the trial from proceeding, as evidenced by his failure to cooperate with each of his attorneys and his consistent requests to substitute appointed counsel. Thus, the court appropriately exercised its discretion in denying defendant's motion for mistrial because he voluntarily waived his right to be present at trial under Rule 43 by refusing to enter the courtroom despite the court's best efforts to encourage his presence.

¶ 11. Nor are we persuaded by defendant's reliance on *Crosby v. United States* for the proposition that a defendant may waive his right to be present at trial only after trial has commenced. 506 U.S. 255, 262 (1993). In *Crosby*, the defendant fled the country prior to trial. The Court held that his behavior could not be construed as a waiver of the right to be present at trial, as "the defendant's initial presence serves to assure that any waiver is indeed knowing." *Id.* at 261. It did not, however, determine whether a defendant could waive the protection of Rule 43 in circumstances other than those present in *Crosby. Id.*; see also *Cuoco v. United States*, 208 F.3d 27, 31 (2d Cir. 2000). Here, the concern for the voluntariness of the waiver — the basis of the high court's opinion — was ameliorated by defendant's presence at the courthouse, his affirmative refusal to enter the courtroom, and his continued refusal to attend trial despite being informed of the proceedings' progress and given numerous opportunities to attend. Furthermore, defendant's presence at the motion hearing on the morning of trial belies any contention that he was unaware of his right to be present at the proceedings affecting him. Particularly here, where defendant previously engaged in delay tactics, the court was justified in holding jury draw and trial to prevent defendant "by such delib-

erate acts, [from] being able to bar the holding of a trial to determine his guilt or innocence." *Dunkerley*, 135 Vt. at 264, 376 A.2d at 47.

¶ 12. Defendant's contention that the court erred by denying counsel's motion to withdraw is likewise unavailing. The decision to substitute appointed counsel is left to the discretion of the trial court, and we will disturb the court's decision only if it abused its discretion. *State v. O'Connell*, 147 Vt. 60, 63, 510 A.2d 167, 168 (1986). In determining whether to appoint new counsel, the court may consider "whether the defendant is merely engaging in delaying tactics," and is not obligated to substitute new counsel simply because the defendant expresses dissatisfaction with assigned counsel. *State v. Ahearn*, 137 Vt. 253, 263, 403 A.2d 696, 703 (1979). The trial court here noted a pattern of the attorney-client relationship deteriorating to the point where counsel moved to withdraw on the eve of trial. While the court granted substitution of counsel twice under such circumstances, it found counsel's motion to withdraw just prior to the September 21 trial date to be part and parcel of defendant's strategy to delay the proceedings. Furthermore, the court determined that the mere filing of an ethical complaint did not rise to the level of a conflict of interest, and that defendant's refusal to cooperate with counsel led to any alleged breakdown of their relationship. A breakdown in communication between a defendant and appointed counsel may serve as good cause for substitution of counsel, but only where the defendant has made a good faith effort to work with his appointed attorney. *Id.* Here, the court appropriately determined that defendant had not made a good faith effort to cooperate with counsel. Rather, it found defendant to be engaging in further delay tactics, and thus, it did not abuse its discretion in denying counsel's motion to withdraw.

¶ 13. Finally, defendant argues that the eight-to-nine-year sentence imposed by

the court is illegal. Under 13 V.S.A. § 7031, the court cannot fix a defendant's term of incarceration by imposing minimum and maximum sentences that are identical. *State v. Kimmick*, 2007 VT 45, ¶ 13, 181 Vt. 635, 928 A.2d 489 (mem.). While the minimum and maximum sentences imposed here were not identical, defendant argues that they were effectively the same when taking into consideration his good-time-credit reduction to the maximum and that the sentence is therefore invalid. As we noted in *Kimmick*, nothing in § 7031 requires the court to consider the effect of good-time credit at sentencing. *Id.* ¶¶ 15, 17. To the extent that the court does consider the good-time reduction, the sentence is nonetheless lawful so long as it does not effectively result in a lesser maximum than minimum sentence, which it did not in this case. See 1999, No. 127 (Adj. Sess.), § 1 (former 28 V.S.A. § 811(g) (repealed by 2005, No. 63, § 4), prohibiting reductions in an inmate's sentence that result in the maximum sentence being less than the minimum sentence); *Kimmick*, 2007 VT 45, ¶ 18 (interpreting former 28 V.S.A. § 811(g) to allow reductions that result in maximum and minimum sentences that are the same).[*] Thus, defendant's sentence is valid.

*Affirmed.*

---

[*] Although 28 V.S.A. 811(g) has since been repealed, it was in effect at the time of defendant's sentencing. See 1 V.S.A. § 214(b).