NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2015 VT 117

No. 2014-292

| State of Vermont | Supreme Court |
| --- | --- |
| | |
| | On Appeal from |
| v. | Superior Court, Bennington Unit, |
| | Criminal Division |
| | |
| William O. Stanley, Sr. | June Term, 2015 |

Nancy Corsones, J.

Christina Rainville, Chief Deputy State's Attorney, Bennington, for Plaintiff-Appellee.

Allison N. Fulcher of Martin & Associates, Barre, for Defendant-Appellant.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1.     **ROBINSON, J.**   Defendant William O. Stanley, Sr., appeals his conviction of sexual assault. On appeal, defendant argues that the trial court (1) erroneously permitted the trial and sentencing to proceed in his absence; (2) erroneously permitted the State to introduce an uncharged prior bad act as evidence; and (3) imposed the habitual-offender enhancement in a way that may have violated the Double Jeopardy Clause. We affirm.

¶ 2.     The evidence at trial, viewed in the light most favorable to the State, is as follows.[1] Defendant is the victim's biological father. At the age of seven, victim was placed with a foster family that later adopted her. Early in 2012, victim, then an adult, wanted to

---

[1] We include additional evidence and procedural background in discussing defendant's respective arguments on appeal.

reconnect with her biological family in Vermont. She discovered that defendant was incarcerated and began writing him letters and talking to him on the telephone.

¶ 3. Victim and her boyfriend traveled to Vermont in August 2012 to visit her biological family. When defendant was released from prison in late September, victim and her boyfriend went to the prison to meet him. Victim was "elated" to have a relationship with defendant. Victim, her boyfriend, and defendant subsequently traveled to Bennington where they stayed in defendant's cousin's living room, where there was an L-shaped couch.

¶ 4. One night, a couple of weeks later, victim stayed awake with defendant watching television and "catching up," while her boyfriend fell asleep on one side of the couch. Victim testified that she fell asleep and then woke to discover that defendant had his fingers inside of her body. Victim grabbed defendant's forearm and told him to stop. After defendant resisted, victim told him that she had to use the bathroom and then ran to the bathroom. She later testified, "I just sat on the toilet with the sickest feeling in my stomach." Victim testified that she did not wake her boyfriend up or call for help because she feared defendant. The next day, victim left defendant at a store and contacted the police to report the assault.

¶ 5. Defendant was convicted of sexual assault after a two-day jury trial and now appeals.

## I. Defendant's Absence from Trial and Sentencing

¶ 6. Defendant's first argument is that the trial court erred in permitting the trial and sentencing to proceed in his absence. The relevant background is as follows. Defendant had a history throughout this case of declining to accept transportation from the corrections facility to the court for various hearings. Before his trial, the State filed a motion to compel defendant to either attend the trial or waive his right to be present. Defendant appeared for the hearing on that motion, and the court determined that defendant planned to appear for the jury draw and trial. The court indicated that if defendant refused transportation to the jury draw or trial, he may

2

waive his appearance and the trial may go forward without him. The court further indicated that if that happened, it would allow defendant's lawyer regular phone access to defendant and defendant could subsequently appear if he changed his mind.

¶ 7. Defendant was present at the jury draw on September 10, 2013. On the morning of September 17, the first day of the jury trial, the court was informed that defendant had punched a wall in his holding cell and threatened to fire his lawyer. In light of this report, before bringing defendant to the courtroom, the court and counsel discussed concerns about how defendant would behave in the courtroom and how the court would respond. The court indicated that it would warn defendant at the outset that any misbehavior would not be tolerated, and may be treated as a waiver of his right to be present. Then, around 9:10 a.m., the court instructed that defendant be brought to the courtroom from his holding cell.

¶ 8. Defendant declined to come to the courtroom, and the court took the following testimony from the officer who had transported him to court:

> [Transport Officer]: I told [defendant] that we had to go into the courtroom for his trial. He said he doesn't want to come up. If he comes up, he's going to attack his attorney and I was just trying to talk to him and tell him that—that's not a good idea . . . .
>
> Court: How many opportunities did you offer him or suggest— how many times did you suggest to him that it was time to leave the holding cell and come into the courtroom to start his trial?
>
> [Transport Officer]: Several times but he told me that he would rather go back to jail and let them do whatever they're going to do here.

¶ 9. On further questioning, the officer described defendant's conduct when he first arrived at the holding cell earlier that morning:

> [H]e was fine on the way down in the van and then we got down— downstairs into the holding area he just started ranting and raving. He punched the wall and I was just in there trying to talk to him and explain to him that, you know, he had a trial today and he just kept saying that he was going to attack his attorney and he doesn't want to come up.

3

¶ 10.   The court, counsel, and court security personnel then discussed various places in the courthouse where defendant could sit and view the proceedings during the trial, and the security and audio-visual technology features of each.   The court then issued a written entry order, which was delivered to defendant in the holding cell.   The order described the transport officer's testimony and provided:

> Based upon this discussion, and the review of the court's entry order dated August 27, 2013 and the Supreme Court decision in State v. Stanley, [(Stanley I), 2007 VT 64, 182 Vt. 565, 933 A.2d 184 (mem.)], the court determines that defendant has waived his right to attend this trial.   The court will offer [d]efendant the opportunity to sit in the holding area to watch a live feed of the trial, while restrained.   We will also take periodic breaks to allow counsel to consult with defendant and the jury will be instructed not to make any inferences from his absences from trial.

¶ 11.   Following a recess, at 9:49 a.m., the court learned that defendant had read the order and thrown it on the floor.   He reportedly said, "[I]f that's what it's going to be, I would rather be upstairs."   At that point, the court expressed concerns about defense counsel's safety in light of defendant's agitated state and repeated, recent threats to attack his lawyer.   The court ruled that defendant had already given up his right to be in the courtroom at that time, saying, "Now, maybe at a recess, he will say okay, 'I'll behave myself,' and we'll regularly consult with him about that but quite frankly I think the waiver was complete 45 minutes ago."   The court summoned the jury and conducted the morning's proceedings without defendant.   It instructed the jury not to draw any inferences from defendant's absence.

¶ 12.   Over the lunch hour, defense counsel met with defendant.   Counsel subsequently reported to the court that defendant did not want to attend the trial.   During the mid-afternoon break, defense counsel again conferred with defendant about the course of the trial.

¶ 13.   The following morning, defendant accepted transport to the courthouse, and met with defense counsel, who "answered questions about the status of the trial and what would

4

happen next." Defendant indicated again that he chose not to enter the courtroom. Defense counsel declined the court's offer to repeat its cautionary instruction regarding defendant's absence at that time. Later that morning, before closing argument, defendant had an opportunity to confer with defense counsel. At the close of evidence, with defense counsel's approval, the trial court instructed the jury:

> You have noted that [defendant] has not been present during this trial. You are not to speculate as to the reasons for his absence and to do so, would violate your oath as jurors and deprive [defendant] of a fair trial.

¶ 14. The jury found defendant guilty. For his sentencing hearing, several months later, defendant refused transport to the court, reporting that he had been off his mental-health medication and did not think he could control himself. Over defense counsel's objections, the trial court conducted the sentencing hearing in defendant's absence.

¶ 15. On appeal, defendant argues that the trial court erred in moving forward with the trial and sentencing in his absence. He acknowledges that he initially declined to enter the courtroom the morning of the jury trial, but argues that, upon reading the trial court's entry order laying out his alternative, he changed his mind and asserted his right to attend the trial. By declining to allow him to join the proceedings at that point, defendant argues, the trial court denied him his right, under Rule 43 of the Vermont Rules of Criminal Procedure, to be present for his trial. Defendant also challenges the trial court's decision to proceed with the sentencing hearing, arguing that there is no evidence that the State would have been prejudiced by continuing the sentencing hearing for two weeks.

¶ 16. We review the trial court's legal conclusion about whether defendant waived his constitutional right to be present at trial de novo. State v. Turner, 2013 VT 26, ¶ 6, 193 Vt. 474, 70 A.3d 1027. We review the court's factual findings for clear error. Id.

¶ 17. Vermont Rule of Criminal Procedure 43(b) provides:

5

The further progress of the trial to and including the return of the verdict shall not be prevented whenever a defendant, initially present,

   (1) in noncapital cases, voluntarily absents [himself or herself] after the trial has commenced, whether or not [he or she] has been informed by the court of [the] obligation to remain during the trial, or

   (2) after being warned by the court that disruptive conduct will cause [him or her] to be removed from the courtroom persists in conduct which is so disruptive that the trial cannot proceed in an orderly manner. In such circumstances the defendant may not be gagged or shackled but shall be removed to another room in the court building, where [the defendant] shall remain while the trial is in progress. A defendant so removed shall be given the opportunity of learning of the trial proceedings through [] counsel at reasonable intervals. Such a defendant shall be summoned to the courtroom at appropriate intervals and on each such occasion shall be offered in open court the opportunity to return to the courtroom for the remainder of the trial upon [] assurance of good behavior.

A defendant is deemed to be "initially present" if present at the beginning of the trial—that is, the impaneling of the jury. See Reporter's Notes, V.R.Cr.P. 43; see also State v. Beattie, 157 Vt. 162, 170, 596 A.2d 919, 924 (1991) (holding that in a jury trial, proceedings commence upon empaneling of jury); In re Dunkerley, 135 Vt. 260, 263, 376 A.2d 43, 46 (1977) (holding that in a jury trial, jeopardy attaches with impaneling and swearing of the jury).

¶ 18. Defendant is no stranger to this issue. In a prior, unrelated case, defendant allowed himself to be transported to the courthouse for a jury draw, but refused to enter the courtroom during the jury draw or trial, remaining instead in the courthouse's holding cell. Stanley I, 2007 VT 64. Throughout jury selection and trial, defendant was periodically informed of the progress of the proceedings and had numerous opportunities to enter the proceedings, but continued to refuse. Id. Defense counsel did not object to the court's decision not to physically compel defendant's presence until the close of evidence, when he moved for a mistrial on the basis of defendant's absence. Id. The trial court denied the motion, and defendant appealed. Id.

Noting that a waiver of the right to be present at trial pursuant to Rule 43 can be construed from the defendant's actions, including "deliberate nonattendance at the trial," we affirmed the judgment of the trial court. Id. (quoting Dunkerley, 135 Vt. at 264-65, 376 A.2d at 47-48). We distinguished the U.S. Supreme Court's decision in Crosby v. United States, 506 U.S. 255 (1993). In that case, the Supreme Court held that under Federal Rule of Criminal Procedure 43(b), the court cannot infer a waiver of a defendant's right to be present at the trial where the defendant fled the country before commencement of the proceedings. Stanley I, 2007 VT 64, ¶ 11 (citing Crosby, 506 U.S. at 262). In Stanley I, by contrast, the defendant was present in the courthouse, and there was no doubt that he knew the proceedings were happening and that he was expected to attend. Id. In those circumstances, we concluded that he could waive his rights under Vermont Rule 43(b) even though he had not been present in the courtroom for the jury draw. Id.

¶ 19.   In many ways, this is an easier case than Stanley I. Defendant here was present at the commencement of the action—that is, the impaneling and swearing of the jury. Under Rule 43(b), there is no question that a trial may proceed in defendant's voluntary absence once it has begun in his presence. There is no dispute that when initially summoned to come to the courtroom, defendant expressly waived his right to attend by specifically indicating his refusal to come to the courtroom.

¶ 20.   Moreover, having decided to proceed with the trial, there is no dispute that the trial court periodically gave defendant opportunities to come to the courtroom—opportunities that he declined in the middle of the first day of trial and at the beginning of the second, and final, day of trial. See Illinois v. Allen, 397 U.S. 337, 343 (1970) ("Once lost [due to obstreperous behavior], the right to be present can, of course, be reclaimed as soon as the defendant is willing to [act] consistently with the decorum and respect inherent in the concept of courts and judicial proceedings."). And there is no dispute that defendant had the opportunity to

7

follow the proceedings by remote technology and confer with counsel throughout the two days of trial.

¶ 21. Finally, the trial court instructed the jury, at the beginning and end of the trial, not to speculate about the reasons for defendant's absences. Defendant does not suggest that the trial court's instructions were inadequate.

¶ 22. What complicates this case is defendant's reaction to the trial court's entry order acknowledging his clear waiver and laying out the alternative plan. Defendant argues that he essentially invoked his right to rejoin the proceedings upon receiving that entry order, which was issued and delivered before the jury was summoned. Defendant's indication that he would rather go upstairs to the courtroom after all came following his express and adamant waiver. It occurred not too long after he was observed ranting, raving, and punching the walls, and within forty minutes of the most recent of his repeated pledges to physically attack his lawyer. He asserted his new preference while tossing the court's order to the floor—a gesture that could have suggested to the court that he remained agitated. Under these circumstances, we cannot conclude that the trial court abused its discretion in concluding that defendant continued to pose a safety threat, especially to his own lawyer, and that an additional cooling-off period was required before defendant would be allowed in the courtroom. The trial court was within its discretion in concluding, at the time it moved forward with the trial, that defendant was not yet prepared to act "consistently with the decorum and respect inherent in the concept of courts and judicial proceedings." Id.

¶ 23. Nor are we persuaded that the trial court erred by proceeding with the sentencing hearing despite defendant's absence. By voluntarily absenting himself from the sentencing hearing, defendant waived his right to be present. See Stanley I, 2007 VT 64, ¶ 10. On appeal, defendant suggests that the trial court erred by not continuing the sentencing hearing for two weeks to allow defendant's new medications to take effect. But before the trial court, defendant

8

did not request a continuance. Even if we construed defense counsel's argument at that hearing as an implicit request for a continuance, the trial court's decision to proceed that day would not have been an abuse of discretion. The sentencing hearing was scheduled about two weeks in advance, giving defendant ample opportunity to timely file a motion. And the parties had already notified the court that there would be no testimony at the sentencing hearing—only review of the presentence investigation report, argument, and allocution. Given these factors, the trial court's decision to go forward with the sentencing hearing in defendant's voluntary absence was well within its discretion.

## II. Introduction of Uncharged Prior Bad Act Evidence

¶ 24. Defendant next argues that the trial court abused its discretion by allowing victim to describe an incident from her childhood in which she saw defendant violently assault her mother.

¶ 25. Before trial, pursuant to Vermont Rule of Criminal Procedure 26(c), the State filed a notice of intent to introduce evidence of past criminal conduct by defendant. In particular, the State sought to elicit testimony from victim concerning an incident she witnessed as a child when defendant assaulted her mother by stabbing her in the head with a butcher knife. The State sought to introduce the evidence to explain victim's fear of defendant. Her state of mind was relevant, the State argued, to explain why she did not respond to the sexual assault with loud protests, did not immediately report the assault to her boyfriend or defendant's cousin, both of whom were present in the apartment at the time, and did voluntarily get in a truck with defendant the next day—still without reporting the assault to anyone. Defendant objected, arguing that the testimony would be highly prejudicial. The trial court ruled that the evidence was admissible, but gave a limiting instruction.

9

¶ 26. Consistent with this ruling, victim described the incident, including her description of her mother's "scalp . . . dangling down." Immediately following this testimony, the trial court instructed the jury:

> Ladies and gentlemen, the testimony that you've just heard from the complaining witness, I'm instructing you that you're only to consider this testimony in the context of the complaining witness' allegation that she is in fear of the defendant and has been in fear of the defendant. It would be error for you to consider that testimony for any other purpose and you are instructed that the defendant was not charged with or convicted of any offense in connection with the description of the events that you've just heard.

¶ 27. In its final instructions after the close of all evidence, the trial court again reminded the jury:

> During this trial, you may have heard testimony that [defendant] may have physically assaulted [victim's] mother at some time before the date of the alleged offense. The law is strict about how you may use this evidence. You may consider it as relevant to the issue of whether [victim] was in fear of [defendant]. However, you may not consider this evidence as tending to prove that [defendant] was acting in the same way or doing the same thing that he did previously. In other words, you may not consider evidence of [defendant's] prior conduct as evidence that he committed the alleged conduct for which he is now on trial.

¶ 28. Defendant argues that the probative value of introducing the stabbing is substantially outweighed by its prejudicial impact, and that the trial court's instruction did not cure the prejudice. Specifically, defendant argues that the instruction was inadequate because it (1) did not warn that defendant was not on trial for any actions other than those specifically charged, and (2) did not advise the jury that the evidence could not be used to conclude that defendant was a person of bad character.

¶ 29. We review the trial court's decision to allow the admission of prior bad act evidence under Vermont Rule of Evidence 404(b) for abuse of discretion. State v. Lawrence, 2013 VT 55, ¶ 18, 194 Vt. 315, 80 A.3d 58 ("The trial court enjoys broad discretion in

10

determining whether evidence is relevant, and will not be overruled absent an abuse of discretion." (quotation omitted)).

¶ 30. Evidence of other crimes, wrongs, or acts is not admissible to show defendant's propensity to engage in criminal conduct, but may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." V.R.E. 404(b); see Lawrence, 2013 VT 55, ¶ 19. The probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice. V.R.E. 403.

¶ 31. In this case, as the trial court repeatedly admonished the jury, the evidence of defendant's alleged prior bad act was not admitted for the purpose of showing that he committed the crime charged in this case; rather, it was admitted to show victim's state of mind. Accordingly, it was not admitted for an impermissible purpose under Rule 404(b).

¶ 32. The more difficult question is whether the evidence was unduly prejudicial. See Lawrence, 2013 VT 55, ¶ 18. We have consistently acknowledged the need to be "vigilant in reviewing the admission of evidence of uncharged misconduct." Id. ¶ 19 (quoting State v. Forbes, 161 Vt. 327, 330, 640 A.2d 13, 16 (1993)).

¶ 33. The trial court acknowledged the prejudicial potential of the evidence, but determined that the evidence was necessary to understand victim's fear of defendant. The court noted that victim continued to stay in the apartment with defendant after the assault, and then got in a truck with him the next day, before dropping him off at a store and reporting the assault. The court explained that these facts would clearly raise a question in the jury's mind about why victim delayed her reporting and did not just go to the police right away. The tendency of the testimony to help answer these questions, in the trial court's view, "narrows that bridge of relevance versus prejudice." We cannot conclude that the trial court abused its discretion in conducting this balancing under Rule 403.

11

¶ 34. Defendant argues that if the evidence was admissible, the limiting instructions were inadequate.[2] Defendant did not object or request any changes to the limiting instructions below, so we review for plain error.[3] See State v. Turner, 2003 VT 73, ¶ 15, 175 Vt. 595, 830 A.2d 122 (mem.) (holding that failure to give limiting instruction in absence of a request or objection is grounds for reversal only on finding of plain error). "Plain-error analysis requires us to consider whether these are exceptional circumstances where a failure to recognize error would result in a miscarriage of justice, or where there is glaring error so grave and serious that it strikes at the very heart of the defendant's constitutional rights." State v. Danforth, 2008 VT 69, ¶ 11, 184 Vt. 122, 956 A.2d 554 (quotation omitted).

¶ 35. In this case, we conclude that the trial court's instructions were adequate to protect defendant's constitutional rights. First, the trial court offered two instructions—one at the time of the testimony at issue, and another at the end of the trial before the jury deliberated. Second, the court's instructions not only instructed the jury about the limited purpose for which it could consider the evidence, but specifically informed the jury that defendant had never been charged or convicted for the alleged assault on victim's mother. The court also instructed the jury that it could not infer from the testimony about this prior assault that defendant was doing the same thing in connection with the incident at issue in this case.

III.  Habitual-Offender Enhancement and Double Jeopardy

¶ 36. After the jury found defendant guilty of sexual assault, the court convened a second phase of the trial so that the State could attempt to prove its habitual-offender charge.

---

[2] In his brief, defendant argues only that the second limiting instruction delivered during the jury charge was inadequate. He does not acknowledge the first instruction given by the court at the time of the testimony.

[3] When the trial court issued its first instruction, immediately after the testimony, it asked, at the end, "Anything else Counsel?" Defense counsel said nothing. At the charge conference, defense counsel said the court's proposed instruction was appropriate. And at the close of the jury instructions, defendant did not object to the instructions.

The State introduced evidence of three prior felony convictions for escape, and the jury found defendant guilty on the habitual-offender enhancement. On appeal, defendant argues that the trial court erred by failing to determine whether any of the predicate offenses for his habitual-offender conviction had already been used in connection with a previous habitual-offender conviction. He argues that if any of the felony convictions that were relied upon by the jury in connection with this habitual-offender enhancement had also been relied upon in his prior habitual-offender enhancement, this would violate the Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution.

¶ 37. Defendant did not raise this argument below, so we review for plain error. State v. Deyo, 2006 VT 120, ¶ 7, 181 Vt. 89, 915 A.2d 249 (reviewing double-jeopardy challenge not raised below for plain error). The habitual-offender statute, 13 V.S.A. § 11, provides, in relevant part, that any person:

> [W]ho, after having been three times convicted . . . of felonies or attempts to commit felonies . . . commits a felony other than murder within this state, may be sentenced upon conviction of such fourth or subsequent offense to imprisonment up to and including life.

Defendant's suggestion that the same prior felonies cannot support a habitual-offender enhancement on more than one subsequent charge flies squarely in the face of our established law. In State v. Kasper, 137 Vt. 184, 404 A.2d 85 (1979), this Court considered and rejected the very argument defendant raises here. The defendant in Kasper was convicted of three charges of assault and robbery and had five prior felonies. Id. at 212, 404 A.2d at 101. On the basis of the habitual-offender statute, the court enhanced the defendant's sentences for each of the three new convictions. This Court rejected the defendant's argument that the trial court had erred in enhancing all three sentences, explaining:

> In our judgment, this statute does not define or create a new offense. It defines a class of individuals, fourth offenders, who are subject to an enhanced penalty when convicted of a felony, and

13

> once the status of habitual criminal is achieved the penalty for each
> subsequent crime is subject to such enhancement. The trial court,
> therefore, did not err in its interpretation of the statute.

Id. at 213, 404 A.2d at 101 (emphasis added) (citations omitted).

¶ 38. The trial court's application of the habitual-offender enhancement did not violate

the Double Jeopardy Clause, and was thus not error of any kind, much less plain error.

Affirmed.

FOR THE COURT:

Associate Justice