*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2017-059

OCTOBER TERM, 2017

In re Z.L., Juvenile                  }    APPEALED FROM:

}

}    Superior Court, Bennington Unit,

}    Family Division

}

}    DOCKET NO. 126-11-13 Bnjv

Trial Judge: David A. Howard

In the above-entitled cause, the Clerk will enter:

Mother appeals the family court's decision approving a permanency plan with a goal of guardianship for her minor son, Z.L., who is currently sixteen years old. We affirm.

The following facts are relevant to this appeal. A more detailed history of the case is set forth in In re Z.L., No. 2016-405, 2017 WL 2374848 (Vt. May 30, 2017) (unpub. mem.), https://www.vermontjudiciary.org/sites/default/files/documents/eo16-405.pdf. In November 2013, the Department for Children and Families (DCF) filed a petition alleging that Z.L. was a child in need of care or supervision (CHINS). Z.L. was adjudicated CHINS in July 2014. In January 2015, the court issued a disposition order approving a conditional custodian for Z.L. The court transferred Z.L.'s custody to DCF in May 2016 when the conditional custodian resigned. DCF filed a permanency plan in October 2016 that recommended the creation of a permanent or legal guardianship for Z.L. Mother objected to the plan, and the court scheduled the matter for a contested permanency hearing on December 13, 2016.

Mother represented herself at the hearing. At the beginning of the hearing, Z.L.'s attorney stated that Z.L. wanted to meet with the court alone in chambers. Mother agreed to this request, as she believed that Z.L. had been poorly represented and improperly influenced by his attorney and guardian ad litem. The court agreed to speak with Z.L. without the attorneys or mother present, provided that the guardian ad litem was present and the conference was conducted in the courtroom so that it could be recorded. The court indicated that it would speak with Z.L. later in the morning, around 11:00 a.m. Mother did not object to this procedure.

During the testimony of DCF's first witness, a Vermont State Police sergeant, mother stated that she was leaving the court because she was already familiar with the sergeant's testimony. The court told mother, "that's your choice. And you can come back anytime earlier, if you wish to." Mother left the courtroom and returned after DCF concluded its direct examination of the sergeant. She proceeded to cross-examine the sergeant. When DCF began its redirect examination, mother again stated that she was leaving because "[t]his is a criminal proceeding . . . . It seems unrelated to legal family court." She returned to the courtroom when the sergeant finished testifying.

As DCF attempted to call its next witness, a Town of Manchester police officer, mother objected that the testimony being presented by DCF was irrelevant and intended to stigmatize her. The court responded that DCF was entitled to present its case. Mother left the courtroom during the direct examination of the officer. She returned to cross-examine him.

DCF's next witness was mother's probation officer. Mother stated, "Well, I guess I should step outside, because none of this seems—this seems to be a criminal proceeding." The court noted that mother had left the courtroom. While the probation officer was being questioned by DCF's attorney, mother returned and informed the court that she was going to the Department of Motor Vehicles in Bennington to pay a bill so that her car would not be towed. The court informed mother that testimony would continue in her absence. Mother stated that the testimony had nothing to do with the custody case, and that she saw no reason why she had to be in the courtroom. The court reminded mother that it would be speaking to Z.L. at 11:00 a.m. Mother asked if she would be able to participate in that conference, and the court said no. Mother then said, "Okay, so if this is going to be criminal this morning, is it going to be criminal this afternoon too?" The court responded that the order of the State's witnesses was not within its control. Mother reiterated that she had to go deal with her car. The court told her that the proceeding would start again at 1:15 p.m.

Shortly after 11:00, Z.L. spoke with the court with the guardian ad litem present. The conference was recorded and lasted about ten minutes. Z.L. stated that he would prefer to continue to live with his foster mother and attend his current high school. He said that he loved his mother, but did not think it was the right time to live with her. He stated that he would like to write letters to mother and have occasional visits with her.

Mother was present in the courtroom when the court resumed proceedings at 1:15 p.m. She stated that she opposed "any presented evidence," because she had not been able to prepare for the State's witnesses and had been prevented from presenting her own witness, who needed a French translator. The court stated that it would note her objection for the record.

DCF then called its final witness, the caseworker who prepared the permanency plan. Mother left briefly during the caseworker's testimony, apparently because her phone rang. The caseworker testified that Z.L. would like to have visits with his family, but wanted to stay with his foster mother and finish his high school education at the school where he was currently enrolled, and then go to college. She also testified that Z.L. had declined recent visits with mother, and had requested to write mother a letter but had not asked for telephone contact with mother. The caseworker testified that Z.L. had unlimited telephone contact with his older sister, who lived in New York, and that in-person contact would be available if the sister came to Vermont.

At the second day of hearing on December 21, 2016, mother presented the testimony of a friend from France. The court then took the matter under advisement. On January 9, 2017, the court issued an order approving the permanency plan. It issued written findings and conclusions regarding the permanency plan on January 25, 2017. Mother appealed.

Mother first argues that the family court committed plain error by allowing the proceedings to continue in mother's absence. Assuming that the plain-error doctrine applies in a civil CHINS proceeding, it is reserved for the "exceptional case" where the error affected fundamental rights and had a prejudicial impact on the outcome of the case. In re D.C., 157 Vt. 659, 660 (1991) (mem.); State v. Oscarson, 2004 VT 4, ¶ 27, 176 Vt. 176. Mother argues that she had a right to be present during the proceedings and that her absence violated her rights under the Fourteenth Amendment to the U.S. Constitution and Chapter I, Article Ten of the Vermont Constitution. She

cites various cases addressing a criminal defendant's Sixth Amendment right to confrontation in support of her argument. See Faretta v. California, 422 U.S. 806 (1975); Illinois v. Allen, 397 U.S. 337 (1970); In re Dunkerley, 135 Vt. 260 (1977).

It is well-settled that there is no federal or state constitutional right to confront witnesses in CHINS proceedings. In re A.L., 163 Vt. 635, 637 (1995) (mem.). However, such proceedings do involve fundamental family rights. For this reason, "parties are afforded the opportunity to cross-examine and rebut opposing witnesses." In re H.A., 153 Vt. 504, 510 (1990). This right is not absolute, however, and the trial court has discretion to control the orderly progress of the trial and the limits of cross-examination. Id.

Mother's right to cross-examine and rebut witnesses was not violated here. Mother had an opportunity to participate in the proceeding, and did so. She cross-examined each of DCF's witnesses. Her absences from the courtroom were entirely of her own volition. The court did not remove mother from the courtroom or prevent her from returning.

Under these circumstances, the court was not obligated to stop the proceedings or warn mother of the potential consequences of her absence. Even in the criminal context, the voluntary absence of a defendant who was present at the beginning of trial does not prevent the trial from proceeding. See State v. Stanley, 2015 VT 117, ¶ 19, 200 Vt. 341 ("[T]here is no question that a trial may proceed in defendant's voluntary absence once it has begun in his presence."); V.R.Cr.P. 43(b) (stating that further progress of trial shall not be prevented where defendants are initially present but voluntarily absent themselves, regardless of whether court has informed them of their obligation to remain during trial). Furthermore, the court did warn mother that she was missing important information by absenting herself from the courtroom. When she was cross-examining the sergeant, she asked why he issued a "flash citation," a subject that had been discussed during direct examination. The court interjected, "Now, if you had stayed here for his testimony, Ms. K[.], you would know all this because he testified to all of this while you chose to walk out . . . . Go ahead, officer, tell her what you already testified." Despite this admonition, mother chose to absent herself from the courtroom several more times while DCF presented its evidence. We see no basis for reversal.

Mother also argues that the court erred in relying on Z.L.'s testimony, because it failed to gain her consent to having the guardian ad litem present during the interview with Z.L., failed to have Z.L. testify under oath, and failed to provide her with the contents of the interview so she could respond.

The court informed mother at the beginning of the hearing that it intended to speak to Z.L. in the courtroom with the guardian ad litem present. Mother did not object to this procedure. The record does not support mother's assertion that "she specifically requested that the guardian ad litem not be present for that interview." She has therefore waived any claim of error with respect to the court holding the conference or the guardian ad litem's presence. See 15 V.S.A. § 594(c) (permitting court in child custody proceeding to interview child on the record "in chambers in the presence of such other persons as the court may specify").

Mother further claims that the court improperly relied on Z.L.'s unsworn statements. We agree with DCF that the court was not required to put Z.L. under oath before hearing Z.L.'s position on the permanency plan. Z.L. was not called to give evidence, but rather asked to speak to the court so that he could advocate for a particular outcome—just as his attorney or guardian might. His statement of his position in the case was essentially argument rather than testimony.

Finally, mother objects that the court failed to provide her with the contents of the interview so that she could respond to the statements of the child. We find this argument to be without merit. The court's discussion with Z.L. was recorded by the court reporter. Mother could have accessed the record at any point to review Z.L.'s statements but evidently did not do so. She did not raise this issue at any point during the remainder of the two-day hearing nor during the time that elapsed between the hearing and the issuance of the permanency order. Further, mother does not identify what rebuttal evidence she would have offered, and thus has failed to show that she was prejudiced by the alleged error.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Beth Robinson, Associate Justice

_____
Karen R. Carroll, Associate Justice

4